# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD PADGETT** | **CASE NO. 6:18-CV-00632** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FIELDWOOD ENERGY, LLC, ET AL.** | **MAG. JUDGE CAROL WHITEHURST** |

# RULING

Pending here is Plaintiff Richard Padgett's ("Padgett") Motion in Limine/*Daubert* Challenge to Exclude the Expert Report and Prospective Testimony of Martin Gee, or in the Alternative, to Limit Prospective Testimony of Martin Gee [Doc. No. 54]. Defendant Facilities Consulting Group ("Facilities") has filed an opposition [Doc. No. 60].

For the following reasons, Padgett's motion is DENIED.

## I.  FACTS AND PROCEDURAL HISTORY

This litigation arises out of an October 10, 2017, accident involving Padgett, a pipe fitter employed by Fluid Crane Company ("Fluid Crane"). Fluid Crane was hired by Fieldwood Energy ("Fieldwood") to perform offshore construction work, primarily post-hurricane repair work on some of its offshore production platforms. Fieldwood also hired Facilities to provide a construction consultant in connection with the work. Jason Simmons ("Simmons") with Facilities was the construction consultant assigned to the work at the time.

On the day of the accident, Fieldwood requested that the Fluid Crane crew perform repairs on a drain line at WD70-D, an offshore production platform. The drain line was approximately 6 to 8 feet above the flooring. As it was late in the day by the time the Fluid Crane crew arrived, the plan was for Padgett, using a safety harness, to perform a preliminary

assessment to determine the extent of repairs needed and for the Fluid Crane crew, using scaffolding, to perform the actual repairs the next day. Padgett climbed up to the drain line that was to be repaired, attached his safety lanyard to the drain line, and was in the process of attempting to attach his second lanyard to an I-beam, when he shifted his weight to the drain line, which then fell, bring Padgett down with it. Padgett suffered injuries as a result of the fall.

One of the liability issues to be decided involves the safety duties and responsibilities of Simmons, the construction consultant. Facilities, Simmons' employer, has retained Martin Gee ("Gee"), a marine engineer, as an expert in the field of fall protection, safety systems, and job safety analyses.

Padgett asserts in its Motion in Limine that the opinions of Gee to which it objects can be summarized as follows:

1. Simmons had no responsibility for safety in carrying out the drain-pipe repair project involved in the accident;

2. Fieldwood Safe Work Practices place no safety responsibilities on Simmons in the conduct of the drain repair project;

3. Simmons had no responsibility to provide scaffolding for the job, even if requested by the crew;

4. Simmons had no obligation to use Stop Work Authority; and

5. The Fluid Crane crew had no reasonable fear of losing their jobs if they utilized Stop Work Authority.

Padgett asserts that the expert report and prospective testimony of Gee should be excluded because he failed to use any reliable scientific methodology in arriving at his opinions and he did

2

not read the depositions of all of the fact witnesses but instead read deposition summaries. Padgett further assets that Gee's testimony is unreliable because it is not based on facts in the record but (1) assumptions which differ substantially from the undisputed record evidence, (2) assumptions without apparent underlying rationale, and (3) altered facts.

Facilities responds that Gee is a marine engineer with decades of experience in the marine offshore industry; that he is well-qualified to testify as an expert based on his training and experience; that there is no requirement that his report follow a certain form or formula; that Padgett's further argument that Gee's testimony should be excluded because he relied on detailed summaries of depositions as opposed to the actual transcripts themselves lacks merit; that Padgett does not point to any purported error in the summaries, which were, in turn, but a fraction of the information reviewed by Gee; and that the notion that the relevant testimony is "undisputed" and that Gee's opinions are contrary to that is incorrect. Facilities concludes that Padgett's Motion in Limine should be denied.

The issue has been fully briefed and the Court is prepared to rule.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the Court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590

.

4

B.  Analysis

1.  Failure to Use Reliable Scientific Methodology

Padgett first asserts that the expert report and prospective testimony of Gee should be excluded because Gee failed to use any reliable scientific methodology in arriving at his opinions and that he instead merely reviewed documentation and compared it with his own experience and knowledge. [Doc. No. 54-6, p. 33; Deposition of Martin Gee]. He argues that the only documentation Gee reviewed was Padgett's deposition, and that Gee did not review the deposition of Simmons or other fact witnesses.

Padgett further asserts that Gee himself conceded that the issue of fall protection on an offshore platform is on the periphery of his expertise; that he has never worked on an offshore production platform; that he has never been in charge of designing any safety programs for offshore production platforms; and that he has never been tasked with implementing any safety programs for offshore production platforms. Padgett argues that Gee is a marine engineer, a "boat guy," and has no direct experience with offshore production platform operations and the safety policies and procedures related thereto.

Padgett concludes that these are the exact type of "it is so because I say it's so" opinions that the Fifth Circuit has confirmed are inadmissible as nothing more than "credentials and subjective opinions," citing *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

Facilities responds that Gee is a marine engineer with extensive experience in the offshore oil and gas and marine construction industry, including offshore production platforms.

5

He graduated with a B.S. in Marine Engineering and Naval Architecture from Hackney College, London, and obtained a United Kingdom Class I (Chief Engineers) certificate, unlimited horsepower steam and motor vessel. [Doc. No. 54-12]. He is a member of the Institute of Marine Engineers, and an American Bureau of Shipping ("ABS") qualified external auditor for the ISM (International Safety Management) Code, Marine Labour Convention and ISPS Code Certificates.

Gee worked in engineering positions on seagoing vessels from 1978-1991. Thereafter he worked as Marine Engineering Manager for Coastal Tug and Barge in Miami from 1991-1996. Gee then served as a senior offshore surveyor for the ABS from 1996 -2016, which work included extensive experience of all phases of marine and offshore vessel surveying, including new construction, installation and demobilization, annual and special surveys, and statutory certification. His work with the ABS also included the survey, certification and repair of land-based and offshore drilling systems, blowout preventers and other drilling equipment. Since 1996, he has been a consulting marine engineer, working with 3D Marine USA from 2016 - 2019, and in 2019 formed his own consulting company, MG Marine Consulting. *Id*.

Although he has never worked on an offshore production platform, he has been employed to do inspection and investigations on offshore production platforms. He has implemented or supervised the implementation of safety programs for offshore production platforms for BP and Shell. [Doc. No. 60-1, p. 39]. During audits he performed on offshore facilities while with ABS, he applied Bureau of Safety and Environmental Enforcement ("BSEE") and Occupational Safety and Health Administration ("OSHA") standards in order to give an assessment or verification as to whether the company's safety management system was working properly. [*Id*., p. 40]. His

assessments have involved fall protection, which is within his area of expertise. [*Id.*, pp. 40-41]. He has provided expert opinions regarding safety systems and job safety analyses. [*Id.*].

Facilities further contends that, despite Padgett's allegations, Gee's expert report [Doc. No. 60-1, pp. 27-37], reflects that Gee reviewed some 80 separate items of data, including Padgett's deposition, video of the area where the accident occurred, photographs and measurements where the accident occurred, job records (including JSAs), safety meeting records, Fieldwood safety procedures, witness statements prepared after the accident, post-accident investigations, detailed summaries of various depositions, and the expert report of Padgett's safety expert, Robert Borison.

Additionally, Facilities contends that Gee's report adequately addresses his method and analysis, and that the issues here are not scientific and not susceptible of a particular formula. Rather, Gee appropriately relied on his training and experience in reviewing the circumstances surrounding the accident and the relationship between the parties. Further, after he issued his report, Gee received additional factual information, including the depositions of other fact witnesses, including Randall Mitchell, Rodney Frederick, Jason Pierre, Christopher Randall, Khamla "Chicago" Vilayphanh, Greg Soileau, and Jason Simmons. [Doc. No. 60-1, p. 42]. Reviewing these depositions did not prompt him to issue a supplemental report and did not change the opinions stated in his report.

The Court finds that Facilities has sufficiently established Gee's qualifications as an expert in fall protection, safety systems, and job safety analyses, even as to offshore production platforms. Padgett has not established that Gee failed to use any reliable scientific methodology in reaching his opinions. Further, as a general rule, questions relating to the bases and sources

of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact. *Primrose Operating Co, v. National Am. Ins. Co*., 382 F.3d 546, 562 (5th Cir. 2004). Thus,"'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."' *Pipitone v. Biomatrix, lnc*., 288 F.3d 239, 250 (quoting *Daubert*, 509 U.S. at 596). The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable. *Johnson v. Arkema, lnc*., 685 F .3d 452, 459 (5th Cir. 2012).

## 2. Assumption of Facts Contrary to the Evidence

Padgett next argues that Gee's testimony is unreliable because it is not based on facts in the record but on (1) assumptions which differ substantially from the undisputed record evidence, (2) assumptions without apparent underlying rationale, and (3) altered facts. Padgett states that, although it is not an exclusive list, the following instances illustrate where Gee's opinions and testimony either directly contradict or simply ignore the known relevant facts bearing on the responsibility of Simmons:

1. Simmons was not the consultant;

2. Fieldwood Safe Work Practices do not apply;

3. Simmons had no safety responsibility for the conduct of the drain repair project;

4. Scaffolding was not required for the drain repair project;

5. Simmons had no responsibility o perform a hazard analysis;

6. Fluid Crane personnel had no fears using Stop Work Authority;

7. Simmons had no responsibility to sue Stop Work Authority; and

8. No one requested scaffolding, and, even if scaffolding was requested, Simmons had no responsibility.

Facilities responds that Gee's opinions are based on his review of 80 separate pieces of documentation or other data, all of which are detailed and listed in his report. Facilities further states that Padgett's contention that the testimony in this case is undisputed and that Gee's opinions run contrary to this purported undisputed testimony is not supported by the record. The depositions of Simmons, Padgett, Chicago, as well as the deposition of Gee, establish the numerous disputed facts in this case, and provide ample support for Gee's opinions, according to Facilities.

The Court finds that Padgett is entitled to cross-examine Gee on these points, but that there is no basis to exclude Gee's testimony. Facilities has made a sufficient showing that Gee's testimony is based upon sufficient facts or data, that the testimony is the product of reliable principles and methods, and that the witness has applied the principles and methods reliably to the facts of the case.

### III. CONCLUSION

For the foregoing reasons, Padgett's Motion in Limine [Doc. No. 54] is DENIED.

Monroe, Louisiana, this 23rd day of January, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE