## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

RICHARD PADGETT                              CASE NO. 6:18-CV-00632

VERSUS                                       JUDGE TERRY A. DOUGHTY

FIELDWOOD ENERGY, LLC, ET AL.        MAG. JUDGE CAROL WHITEHURST

## RULING

Pending here are two Motions for Summary Judgment filed by two different Defendants. Defendant Wood Group PSN, Inc. ("Wood Group") filed the first Motion for Summary Judgment [Doc. No. 56], to which Plaintiff Richard Padgett ("Padgett") has filed an opposition [Doc. No. 62]. Wood Group has filed a reply to the opposition [Doc. No. 63].

Defendant Fieldwood Energy, LLC ("Fieldwood") filed the second Motion for Summary Judgment [Doc. No. 58], to which Padgett has filed an opposition [Doc. No. 61]. Fieldwood has filed a reply to that opposition [Doc. No. 66].

Additionally, Defendant Facilities Consulting Group, LLC ("Facilities"), who did not file a Motion for Summary Judgment, has nevertheless filed a response to Padgett's oppositions to both Motions for Summary Judgment [Doc. No. 69].

For the following reasons, both Motions for Summary Judgment are GRANTED.

## I.      FACTS AND PROCEDURAL HISTORY

This litigation arises out of an October 10, 2017 accident involving Padgett, a pipe fitter employed by Fluid Crane Company ("Fluid Crane"). Fluid Crane was hired by Fieldwood to perform offshore construction work, primarily post-hurricane repair work on some of Fieldwood's offshore production platforms. Fieldwood also hired Facilities to provide a

construction consultant in connection with the work. Jason Simmons ("Simmons"), a Facilities employee, was the construction consultant assigned to the work.

Fieldwood additionally hired Wood Group to provide production workers for its offshore platforms. Randall Mitchell ("Mitchell") was an employee of Wood Group and was assigned to work for Fieldwood as a Production Operator. On the day of the accident, Fieldwood had tasked Mitchell with inspecting WD70-D, an offshore production platform, with regard to damage caused by Hurricane Nate. After arriving at the platform, Mitchell discovered that a four-inch drainpipe was leaking and needed to be repaired before the platform could be brought back into production. Mitchell reported this to the area construction supervisors for Fieldwood, who then requested that the Fluid Crane crew go to the platform and perform the repairs. As Production Operator, Mitchell was then tasked with drying out the platform generator and getting the generator back online. Thus, Fieldwood's only direct involvement in the drain repair project was limited to directing the Fluid Crane crew to the platform to repair the drains.

Mitchell was also the crane operator on the platform. When the Fluid Crane crew arrived by crewboat, Mitchell facilitated the transfer of the construction equipment to the platform by crane. He then showed the leaking drainpipe to Simmons and to Khamla "Chicago" Vilayphanh, the foreman of the Fluid Crane crew.

Chicago prepared a Job Safety Analysis ("JSA") outlining what operations the construction crew was going to perform. All of the personnel on the platform attended a safety meeting. Mitchell signed the JSA as the Production Person in Charge and then returned to his duties.

The drain line was approximately 6 to 8 feet above the flooring. As it was late in the day

by the time the Fluid Crane crew arrived, the plan was for Padgett, using a safety harness, to perform a preliminary assessment to determine the extent of repairs needed and for the Fluid Crane crew, using scaffolding, to perform the actual repairs the next day. Padgett climbed up to the drain line that was to be repaired, attached his safety lanyard to the drain line, and was in the process of attempting to attach his second lanyard to an I-beam, when he shifted his weight to the drain line, which then fell, bringing Padgett down with it. Padgett suffered injuries as a result of the fall.

On May 11, 2018, Padgett filed a Complaint against Defendants Fieldwood and Facilities alleging negligence on the part of those Defendants, including an asserted duty of Fieldwood to provide him with a safe place to work or to otherwise ensure his safety. [Doc. No. 1]. On February 12, 2019, Padgett filed his First Amended Complaint adding Wood Group as an additional Defendant and alleging that Fieldwood was responsible for the defective and ruinous condition of the drainpipe. [Doc. No.23].

On January 10, 2020, Wood Group filed its Motion for Summary Judgment, seeking judgment as a matter of law dismissing Padgett's claims against it on the grounds that its employee, Mitchell, was at all times employed as a Production Supervisor on the platform and was not charged with supervising or giving instructions to the independent contractors on site, including Padgett's employer Fluid Crane, or to the construction supervisor, Simmons, who was employed by Facilities. [Doc. No. 56]. Wood Group further contends that it was entitled to rely upon the expertise of the independent contractors conducting the construction operations, and, therefore, Padgett's claims against it should be dismissed.

On that same day, Fieldwood filed its Motion for Summary Judgment asserting that it is

entitled to judgment as a matter of law dismissing Padgett's claims against it because it does not owe Padgett a legal duty under the circumstances of this case. Fieldwood further contends that it is not liable for the negligence or fault of its independent contractors and that it was not independently negligent as a matter of law. [Doc. No. 58].

In his oppositions, Padgett does not contest Wood Group's or Fieldwood's independent contractor arguments. Instead, Padgett's oppositions are devoted to narrating a version of the evidence that blames Facilities' employee, Simmons, for the accident because he did not order scaffolding to be erected prior to Padgett's inspection of the drainpipe to be repaired. Padgett argues that scaffolding should have been used at all times in this case and that Fieldwood's own Bureau of Safety and Environmental Enforcement ("BSEE") mandated Safe Work Practices in fact required scaffolding.

With specific regard to Wood Group's motion for summary judgment, Padgett states that the issue before the Court is whether Fieldwood delegated any duties regarding the administration and execution of its BSEE-mandated Safe Work Practices to Wood Group. In the event the Court finds that Fieldwood did not delegate any such responsibilities under the facts of this case, Padgett agrees that Wood Group is entitled to summary judgment, and he has no objection to it. [Doc. No. 62].

In its reply, Wood Group asserts that Padgett had failed to produce any evidence which would support a negligence claim against Wood Group or Wood Group's employee, Mitchell, as Mitchell had no operational control and had no duty to intervene into the operations of Padgett's employer, Fluid Crane. Wood Group further submits that the contractual relationship between Fluid Crane and Fieldwood, who assigned Mitchell to the platform, makes it clear that Fluid

Crane was responsible for the safety of Padgett and for providing trained personnel to work on the platform, as an independent contractor. [Doc. No. 63].

With specific regard to Fieldwood's motion for summary judgment, Padgett states that the issue before the Court is whether Fieldwood can legally delegate the administration and execution of its BSEE-mandated Safe Work Practices to Facilities (and its employee Simmons), as a consultant, and whether in fact it effectively did so in this case. In the event the Court finds that Fieldwood can legally delegate such responsibilities to Facilities and Simmons, and under the cited facts did in fact effectively do so, Padgett agrees that Fieldwood is entitled to summary judgment, and he has no objection to it. [Doc. No. 61].

In its reply, Fieldwood points out that Padgett's opposition did not contest any of the grounds advanced by Fieldwood as entitling it to summary judgment. Fieldwood further asserts that, to the extent that Padgett may be arguing that Fieldwood is somehow responsible to Padgett for complying with BSEE regulations absent delegation to Facilities, Fieldwood's Safety and Environmental Management System ("SEMS") and other BSEE regulations are irrelevant in determining whether a duty is owed under Louisiana law. [Doc. No. 66].

Facilities did not move for summary judgment on Padgett's claims, and, likewise, Padgett did not move for summary judgment on his claims against Facilities. Facilities nevertheless requested and was granted leave to file a response to Padgett's oppositions. [Doc. No. 69] Facilities asserts that Padgett spends almost the entirety of his oppositions misconstruing the evidence in an attempt to place blame on Facilities. Facilities further asserts that Padgett's claim that the legal issue before this Court regarding Fieldwood's motion for summary judgment is whether Fieldwood can legally delegate the administration and execution of its BESE-

mandated Safe Work Practices to Facilities and whether it effectively did so in this case, is wholly untrue. At no point does Fieldwood raise this "legal issue" in its motion. Facilities states that if Padgett wished to obtain summary judgment on that issue, then he should have filed his own motion for summary judgment, but he did not, and the deadlines have since passed. Therefore, according to Facilities, Padgett's improper attempt to seek summary judgment on this new issue in his oppositions must be disregarded as improper and untimely.

Facilities additionally contends that Padgett has misrepresented the evidence as well as the applicable negligence standard. Facilities concludes that Padgett's attempt to force Facilities' liability into issue in the Co-Defendants Motions for Summary Judgment is improper, especially as the dispositive motion deadline has passed.

The motions are fully briefed, and the Court is prepared to rule.

## II.    Law and Analysis

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or

nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B.      Independent Contractor Law

Pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A), Louisiana substantive law is statutorily incorporated as the federal law applicable to Padgett's claims. *See e.g., Rodrigue v. Ætna Cas. & Surety Co*., 395 U.S. 352, 356-57 (1969). Louisiana law provides the general rule that a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract. *Graham v. Amoco Oil Company*, 21 F.3d 643, 645 (5th Cir. 1994); *Roberts v. Cardinal Servs., Inc*., 266 F.3d 368, 380 (5th Cir. 2001); *Ainsworth v. Shell Offshore, Inc*., 829 F.2d 548, 549 (5th Cir. 1987). This general rule has two exceptions under which a principal may be liable when: (1) the suit arises out of the ultrahazardous activities of its

independent contractor; or (2) the principal retains operational control over the independent contractor's acts or expressly or impliedly authorizes those acts. *Id.*

Under the first exception to the independent contractor defense, an oil company/principal may not avoid liability for injuries resulting from an ultrahazardous activity by hiring out the work to an independent contractor. *Davis v. Dynamic Offshore Resources, L.L.C.*, 865 F.3d 235, 236 (5th Cir. 2017); *Roberts* and *Ainsworth*, *supra*. To qualify as ultrahazardous work, there must be evidence that the activity can cause injury, even when conducted with the greatest prudence and care. *Roberts, supra.* Similarly, Louisiana law considers only whether an activity is per se ultrahazardous, not whether an activity in specific conditions is ultrahazardous. *Davis*, 865 F.3d at 236.

Under the second exception to the independent contractor defense, a principal is liable for the negligent acts of its independent contractor, if the principal retains or exercises operational control over that contractor. *Roberts*, 266 F. 3d at 380; *Ainsworth*, 829 F.2d at 550.   In determining the existence of operational control, "the most important question is whether and to what extent the right to control the work has been contractually reserved by the principal." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).

In *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989), the Fifth Circuit found:

> [i]n order for [a principal] to be liable for the actions of an [independent contractor], the [principal] must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations.

*Id.* at 1471.

Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *LeJeune v. Shell Oil Co*., 950 F.2d 267, 270 (5th Cir. 1992); *McCormack v. Noble Drilling Corp*., 608 F.2d 169, 175 n. 9 (5th Cir. 1979). "[A]bsent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury," a principal cannot be liable under the operational control exception. *Coulter*, 117 F.2d at 912.

Furthermore, even if a contract requires a contractor to comply with the principal's safety standards, this requirement does not constitute operational control sufficient to vitiate the independent contractor relationship. The law is settled that "the fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control." *Duplantis v. Shell Offshore, Inc*.,948 F.2d 187, 193 (5th Cir. 1991); *see also LeJeune*, 950 F.2d at 269.

**C.    Analysis**

There is no dispute that Wood Group, Facilities, and Fluid Crane were independent contractors.

Additionally, Padgett has not alleged any ultra-hazardous activity in this case.   Further, it has been held that construction work is not an intrinsically or inherently dangerous activity. *Davenport v. Amax Nickel, Inc*., No. 90-0289 (La. App. 4th Cir. 10/11/90), 569 So.2d 23, 28; *Guillory v. Conoco, Inc.,* (La. App. 3d Cir. 1988), 521 So.2d 1220. The first exception, therefore, does not apply.   The Court, thus, considers whether the second exception applies to Wood Group and/or Fieldwood's Motion for Summary Judgment.

### 1.    Wood Group's Motion for Summary Judgment

Wood Group contends that it is entitled to judgment as a matter of law dismissing all of Padgett's claims against it because its employee, Mitchell, was not charged with supervising or giving instructions to the independent contractors on site and because he was entitled to rely upon the expertise of the independent contractors conducting the construction operations.

In his opposition, Padgett did not contest or otherwise respond to any of these arguments. Instead, as indicated above, Padgett's opposition is devoted to narrating a version of the evidence that blames Facilities' employee, Simmons, for the accident because he did not order scaffolding to be erected prior to Padgett's inspection of the drainpipe to be repaired.

The failure to brief or argue an issue in response to a motion for summary judgment waives that argument in subsequent proceedings. *Davidson v. Fairchild Controls Corp*., 882 F.3d 180, 185 (5th Cir. 2018). "The Fifth Circuit makes it clear that when a party does not address any issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB, LLC v. Board of Comm. & Indus.,* 336 F. Supp. 3d 620, 634 (M.D. La 2018).

It is undisputed that Mitchell did not devise any method for the construction operation or the repair and left those details to the Fluid Crane crew.   It is further undisputed that he was not present at the time of the accident as he had returned to the crane to continue offloading equipment.   It is undisputed that Mitchell did not have construction expertise and did not and was not expected to supervise the Fluid Crane crew.

Therefore, the Court finds that Wood Group's Motion for Summary Judgment should be GRANTED, and that all claims of Padgett against Wood Group should be DISMISSED WITH PREJUDICE.

## 2.  Fieldwood's Motion for Summary Judgment

Fieldwood argued in its motion that it is entitled to judgment as a matter of law because:

1.  Fieldwood was not liable for the negligence or fault of its independent contractor, Fluid Crane –the employer of Padgett;

2.  Fieldwood did not exercise operational control over Fluid Crane's drain line repairs;

3.  drainpipe repair is not an ultrahazardous activity;

4.  Fieldwood was not liable under Louisiana Civil Code articles 2315, 2316, 2317 and 2322 because the condition of the drainpipe did not present an unreasonable risk of harm to Padgett, an experienced and expert repairman/rigger;

5.  the condition of the drainpipe was open and obvious to all who saw it, and, thus Fieldwood had no duty to warn concerning its condition (Fieldwood in fact wanted Fluid Crane to repair the drain line at issue); and,

6.  Padgett failed to allege in the pleadings that Fieldwood rushed Facilities' construction consultant, Simmons, and, thus, Padgett cannot do so in opposition to summary judgment.

In his opposition, Padgett did not contest or otherwise respond to any of these arguments. Instead, as indicated above, Padgett's opposition is devoted to narrating a version of the evidence that blames Facilities' employee Simmons for the accident because he did not order scaffolding to be erected prior to Padgett's inspection of the drainpipe to be repaired.

As further indicated above, the failure to brief or argue an issue in response to a motion for summary judgment waives that argument in subsequent proceedings. *Davidson, supra; JMCB, LLC, supra.*

Fieldwood has submitted ample summary judgment evidence to show, and Padgett does not dispute, that Fluid Crane and Facilities were independent contractors. The undisputed material facts show that Fieldwood did not retain or exercise operational control over Fluid Crain or Facilities. Additionally, Padgett has not produced any evidence to show that Fieldwood was independently negligent as a matter of law. The evidence is undisputed that the drainpipe was open and obvious to all who saw it.

Therefore, the Court finds that Fieldwood's Motion for Summary Judgment should be GRANTED and that all claims of Padgett against Fieldwood should be DISMISSED WITH PREJUDICE.

### 3. Padgett's Arguments

Although Padgett's oppositions are devoted to narrating a version of the evidence that blames Facilities' employee Simmons for the accident because he did not order scaffolding to be erected prior to Padgett's inspection of the drainpipe to be repaired, the Court makes no ruling as to Facilities' alleged duties or any alleged breach thereof. Facilities did not move for summary judgment on Padgett's claims, and likewise, Padgett did not move for summary judgment on his claims against Facilities. Therefore, Padgett's allegations and arguments are irrelevant to the pending motions.

## III. CONCLUSION

For the foregoing reasons, Defendant Wood Group's Motion for Summary Judgment [Doc. No. 56] is GRANTED. Further, Defendant Fieldwood's Motion for Summary Judgment [Doc. No. 58] is GRANTED. All claims of Padgett against Wood Group and Fieldwood are DISMISSED WITH PREJUDICE.

Monroe, Louisiana, this 31st day of January, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE