UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD PADGETT** | **CASE NO. 6:18-CV-00632** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FIELDWOOD ENERGY, LLC, ET AL.** | **MAG. JUDGE CAROL WHITEHURST** |

RULING

Pending here is Defendant Facilities Consulting Group, Inc.'s ("FCG") Motion in Limine to Exclude Evidence of Excessive Medical Charges [Doc. No. 70]. Plaintiff Richard Padgett ("Padgett") has filed an opposition [Doc. No. 82].

For the following reasons, FCG's motion is GRANTED IN PART AND DENIED IN PART.

**I.     FACTS AND PROCEDURAL HISTORY**

This litigation arises out of an October 10, 2017, accident involving Padgett, a pipe fitter employed by Fluid Crane & Construction ("Fluid Crane"). Fluid Crane was hired by Fieldwood Energy ("Fieldwood") to perform offshore construction work, primarily post-hurricane repair work on some of its offshore production platforms. Fieldwood also hired FCG to provide a construction consultant in connection with the work.

On the day of the accident, Fieldwood requested that the Fluid Crane crew perform repairs on a drain line at WD70-D, an offshore production platform. The drain line was approximately 6 to 8 feet above the flooring. As it was late in the day by the time the Fluid Crane crew arrived, the plan was for Padgett, using a safety harness, to perform a preliminary assessment to determine the extent of repairs needed and for the Fluid Crane crew, using

scaffolding, to perform the actual repairs the next day. Padgett climbed up to the drain line that was to be repaired, attached his safety lanyard to the drain line, and was in the process of attempting to attach his second lanyard to an I-beam, when he shifted his weight to the drain line, which then fell, bring Padgett down with it. Padgett suffered injuries as a result of the fall.

As Padgett was injured on the Outer Continental Shelf during the course and scope of his employment, he received medical and indemnity benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Fluid Crane's LHWCA carrier, American Longshore Mutual Association, Ltd. ("ALMA") has lien rights in this lawsuit for reimbursement for indemnity and medical benefits.

In response to requests for itemization of his medical expenses, Padgett produced invoices from his medical providers. The invoices indicate the entire amount billed, but do not represent the actual payment for treatment. Under a statutorily mandated LHWCA cost schedule, Padgett's providers have accepted lesser amounts as payment in full. The difference between the amount listed on the invoice and the amount paid pursuant to the schedule is often referred to as the "write off" amount. However, as part of his past medical expenses, Padgett seeks to recover from FCG the entire amount listed on the invoice, including the write off amount. FCG, however, seeks to exclude testimony and evidence related to the write off amount.

Additionally, Padgett seeks to recover future medical expenses. To support this claim, he has retained an expert life care planner who has estimated the cost of Padgett's medical treatment based on amounts in excess of the LHWCA cost schedule. FCG also moves to exclude the expert estimates on future medical expenses to the extent that they rely on costs in

excess of the amounts on the LHWCA cost schedule.

The motion has been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

> The Outer Continental Shelf Lands Act (OCSLA), 67 Stat. 462, 43 U.S.C. § 1331 et seq., extends federal law to the subsoil and seabed of the Outer Continental Shelf and all attachments thereon (OCS). Under the OCSLA, all law on the OCS is federal law, administered by federal officials. The OCSLA denies States any interest in or jurisdiction over the OCS, and it deems the adjacent State's laws to be federal law "[t]o the extent that they are applicable and not inconsistent with" other federal law. § 1333(a)(2)(A).

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019).

As an employee working on the Outer Continental Shelf, Padgett's injury was covered by the LHWCA. Under the LHWCA, "[e]very employer shall be liable for and shall secure" compensation payments for his employees "under sections 907, 908, and 909 of this title." 33 U.S.C. § 904(a). Padgett's employer did so by obtaining insurance from ALMA.

Section 907(a) specifically provides that the employer "shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require." Medical expenses, however, are statutorily limited as follows:

> All fees and other charges for medical examinations, treatment, or service shall be limited to such charges as prevail in the community for such treatment, and shall be subject to regulation by the Secretary. The Secretary shall issue regulations limiting the nature and extent of medical expenses chargeable against the employer without authorization of the employer or the Secretary.

33 U.S.C. § 907(g). There is currently in place an August 30, 2019 Office of Workers' Compensation Programs ("OWCP") Medical Fee Schedule. *See* [Doc. No. 70-7, Exhibit 5]. Under this schedule, ALMA has paid medical expenses for Padgett in an amount less than that

3

invoiced.

Typically, the collateral-source rule bars a tortfeasor from reducing his liability by the amount plaintiff recovers from independent sources. *See Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994).

> It is a substantive rule of law, as well as an evidentiary rule (disallowing evidence of insurance or other collateral payments that may influence a fact finder). *Id.* In its simplest form, the rule asks whether the tortfeasor contributed to, or was otherwise responsible for, a particular income source. *See Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980). If not, the income is considered "independent of (or collateral to) the tortfeasor," and the tortfeasor may not reduce its damages by that amount. *Davis*, 18 F.3d at 1243. In practice, the rule allows plaintiffs to recover expenses they did not personally have to pay. *See id.* Without the rule, however, a third-party income source would create a windfall for the tortfeasor. Id. at 1244. Thus, the rule reflects a policy determination: better a potential windfall for the injured plaintiff than the liable tortfeasor.

*DePerrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358-59 (5th Cir. 2016).

In *DePerrodil*, a passenger covered by the LHWCA brought an action against a vessel owner, seeking to recover damages for back injuries sustained when the vessel encountered rough seas. Among other issues, the United States Court of Appeals for the Fifth Circuit considered whether the passenger could recover medical expenses that were billed by medical providers, but were ultimately written off. Reversing the district court, the *DePerrodil* Court found that he could not.

In reaching this conclusion, the Fifth Circuit noted that "[t]here is no direct authority regarding the treatment of written-off LHWCA medical expenses in the maritime-tort context." *Id.* at 360. The Court relied on its prior decision in *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 381 (5th Cir. 2012), where it found that a maritime plaintiff could not recover written-off medical expenses when an employer paid the expenses as part of its maritime cure

4

obligation. 842 F.3d at 360. Although not binding, the *DePerrodil* Court found its rationale "very persuasive because maritime cure and LHWCA insurance create similar obligations for employers." *Id.* "Cure is a vessel-owner's long-established duty to pay medical expenses for seamen injured at sea" and "compels an employer to pay work-related medical expenses, regardless of 'fault or negligence of the shipowner.'" *Id.* (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994)). "The LHWCA was enacted in part based on shortcomings of maritime cure" to cover longshoremen and harbor workers who do not necessarily qualify for maritime maintenance and cure because a significant portion of their work is done on shore. *Id.* And, "[l]ike maritime cure, LHWCA creates a no-fault basis for paying a longshoreman's medical expenses." *Id.* at 361 (citing 33 U.S.C. § 904(b)). The Fifth Circuit found that, [w]hen a third-party tortfeasor is responsible for the employee's injury, cure and LHWCA insurance function in the same manner: the employer (or its insurer) has an immediate duty to pay medical expenses even though it is not at fault." *Id.* Based on these similarities, the Fifth Circuit held that a LHWCA "plaintiff may not recover for expenses billed, but not paid. *Id.*; *see also Simmons v. Cornerstone Investments*, LLC, 282 So.3d 199 (La. 2019) (applying *DePerrodil* and holding that discount in amount of medical expenses paid by workers' compensation was not payment to plaintiff from a collateral source.).

Under the precedent of *DePerrodil*, Padgett may not recover for medical expenses billed, but not paid. While Padgett does not agree with that holding and seeks to preserve his argument for appeal, this Court is nonetheless bound by *DePerrodil*. Therefore, to the extent that FCG moves to exclude evidence and testimony as to Padgett's past medical expenses, its Motion in Limine is GRANTED.

5

However, FCG also seeks to exclude evidence and testimony with regard to future medical expenses. In support of this argument, FCG cites to statutory provisions that an employer "shall" furnish medical treatment "for such period as the nature of the injury or the process of recovery may require." 33 U.S.C. § 907(a). Thus, FCG argues that future medical expenses will also be paid by ALMA and at the rates provided on the OWCP Medical Fee Schedule or, if not set forth on the Schedule, at the prevailing community rate.

Padgett responds that neither *DePerrodil* nor *Simmons* (the Louisiana Supreme Court case applying *DePerrodil*) specifically addresses future medical expenses. Additionally, Padgett points out that future medical expenses are treated differently because the process is different. Although LHWCA insurance does generally provide benefits for future medical treatment, if an employee, such as Padgett, recovers from a third party, LHWCA does not provide any further medical benefits unless and until the "credit" from such recovery is exhausted.

In *Parfait v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*, 903 F.3d 505 (5th Cir. 2018), the Fifth Circuit explained the process when an employee subject to the LHWCA recovers from a third party tortfeasor:

> Section 33 of the LHWCA guarantees prompt payment of compensation to an employee injured through the negligence of a third party. Under this scheme, . . . the employee may receive longshore benefits and still maintain a civil action against a negligent third party. To ensure that the employee does not receive a double recovery, the employer is granted rights to full reimbursement of all benefits paid, including compensation and medical benefits, from net third-party recoveries. **If such recoveries exceed benefits already paid, the employer is allowed to credit any remainder against its future liability under the LHWCA**.

*Id.* at 508–09 (emphasis added). Under this process, the employee would not receive the benefit

of the OWCP Medical Fee Schedule or any discount until he has exhausted any recovery for future medical expenses (i.e., the credit to his employer).[1]

Under these facts, the Court agrees with Padgett that he should not be prohibited from presenting evidence and testimony regarding full amount of any future medical expenses. Accordingly, to this extent, FCG's Motion in Limine is DENIED.

### III. CONCLUSION

For the foregoing reasons, FCG's Motion in Limine [Doc. No. 70] is GRANTED IN PART AND DENIED IN PART. To the extent that FCG moves to exclude evidence and testimony related to the "write-off" portion of Padgett's past medical expenses, the motion is GRANTED. To the extent that FCG moves to exclude such evidence and testimony related to Padgett's future medical expenses, the motion is DENIED.

Monroe, Louisiana, this 13th day of February, 2020.

                                           **TERRY A. DOUGHTY**
                                           **UNITED STATES DISTRICT JUDGE**

---

[1] While not binding precedent, the Court would note that the *DePerrodil* was a decision of the Western District of Louisiana, and the Fifth Circuit did not vacate that portion of the judgment awarding future medical expenses. In other words, no reduction was made to the award of future medical expenses, and no appeal was had on that issue.