# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD PADGETT** | **CASE NO. 6:18-CV-00632** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FIELDWOOD ENERGY, LLC, ET AL.** | **MAG. JUDGE CAROL WHITEHURST** |

# RULING

Pending here is Defendant Facilities Consulting Group, Inc.'s ("FCG") Daubert Motion and/or Motion in Limine to Exclude Plaintiff's Safety Expert, Robert E. Borison [Doc. No. 80]. Plaintiff Richard Padgett ("Padgett") has filed an opposition [Doc. No. 87].

For the following reasons, FCG's motion is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

This litigation arises out of an October 10, 2017, accident involving Padgett, a pipe fitter employed by Fluid Crane & Construction ("Fluid Crane"). Fluid Crane was hired by Fieldwood Energy ("Fieldwood") to perform offshore construction work, primarily post-hurricane repair work on some of its offshore production platforms. Fieldwood also hired FCG to provide a construction consultant in connection with the work. Jason Simmons ("Simmons") with FCG was the construction consultant assigned to the work at the time.

On the day of the accident, Fieldwood requested that the Fluid Crane crew perform repairs on a drain line aboard the West Delta Platform No. 70-D, an offshore production platform owned by Fieldwood. The drain line was approximately 6 to 8 feet above the flooring. As it was late in the day by the time the Fluid Crane crew arrived, the plan was for Padgett, using a safety harness, to perform a preliminary assessment to determine the extent of repairs needed and for

the Fluid Crane crew, using scaffolding, to perform the actual repairs the next day. Padgett climbed up to the drain line that was to be repaired, attached his safety lanyard to the drain line, and was in the process of attempting to attach his second lanyard to an I-beam, when he shifted his weight to the drain line, which then fell, bringing Padgett down with it. Padgett suffered injuries as a result of the fall.

Padgett alleges that FCG was negligent in the performance of supervisory duties on the date of the accident. Specifically, he alleges as follows:

> . . . on October 10, 2017, Richard Padgett was performing work on West Delta Platform 70D under the supervision and control of [FCG], Wood Group PSN, and/or Fieldwood Energy, when Padgett was ordered by [FCG], Wood Group PSN, Inc., and/or Fieldwood Energy personnel to climb a stack of pipe in order to initiate repairs on a section of the platform that was overhead, specifically a section of drain piping. As Padgett was climbing, the stack of pipe suddenly and without warning collapsed causing him to fall hard from his elevated position onto the steel deck below.

[Doc. No. 21-3, ¶3].

One of the liability issues to be decided involves the safety duties and responsibilities of Simmons, the construction consultant. Padgett has retained Robert E. Borison ("Borison") to testify as an expert in safety at trial. Borison has over 50 years of experience in the industries of exploration, production, and transportation of oil and gas and the marine, general and commercial industries. As a safety officer, Borison "was required to have a working knowledge of . . . regulations and standards of care and the ability to apply them to the company's oil and gas production and marine, general, industrial, and commercial work activities." [Doc. No. 80-3, December 16, 2019 Report of Robert E. Borison ("Borison Report"), p. 2].

On February 7, 2020, FCG filed the instant motion seeking a court ruling to exclude Borison's testimony because "it will not assist the trier of fact at the trial of this matter and is not

based on sufficient facts or data; it is therefore unreliable, irrelevant, and inadmissible." [Doc. No. 80-2, p. 1].

On March 2, 2020, Padgett filed a memorandum in opposition to the motion [Doc. No. 87], contending that Borison is qualified by experience to testify as an expert, that his testimony will assist jurors "in assessing 'matters involving job responsibilities and chain of command on the Fieldwood platform, as well as alternative methods for completing the tasks that may be less than obvious to a lay juror,'" and that Borison's testimony is appropriately based on his review of deposition testimony, documents produced by FCG, and over 720 pages of documents directly related to this accident. [Doc. No. 87, pp. 12, 15-17 (quoting *Singleton v. Fieldwood Energy, LLC,* Civ. Ac. No. 15-5558, 2016 WL 3940279 (E.D. La. July 21, 2016))].

The motion has been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When faced with expert scientific testimony, the court must determine at the outset if the proponent of the evidence has proven its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592

n.10 (1993) (citing FED. R. EVID. 104(a) and *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987)). Courts have considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997).

However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. Reliability and relevance, under Rule 702, are the hallmarks of admissible expert testimony. *Daubert*, 509 U.S. at 589; *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012). In making its reliability determination, the court must assess whether the "reasoning or methodology underlying the testimony is scientifically valid."

*Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In assessing relevance, courts "must determine whether that reasoning or methodology can be properly applied to the facts in issue." *Id.* (citing *Daubert*, 509 U.S. at 592-93).

Ultimately, "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

In this case, FCG does not challenge Borison's general qualifications as an expert, but rather argues that his opinions are not helpful to the trier of fact, are not reliable, and are not relevant. Borison used a root cause analysis methodology, applying a step by step technique and procedure for ascertaining and analyzing the causes of the accident. He provides five opinions on why the incident occurred, which are referred to as an (l) equipment problem, (2)

communication problem, (3) job pre plan and job safety analysis problem, (4) work procedure problem, and (5) stop work authority problem.

> Opinion No. 1. Equipment Problem: Fieldwood Energy, Mr. Mitchell, and Mr. Simmons' failure to secure scaffolding for the Fluid Crane's crew to work off of while inspecting the site from heights, prepping the site and repairing the drain line on WD 70D Platform.
>
> Opinion No. 2. Communication Problem: Mr. Gregory Soileau's failure to conduct proper communications when assigning a work assignment to the crew, and Mr. Jason Simmons' alleged failure to verify the importance and time sensitive nature of the assignment if one existed.
>
> Opinion No. 3. Job Pre Plan and Job Safety Analysis Problem: Mr. Jason Simmons' failure, as the construction [person in charge], to perform hazard analysis, JSA, that identified the hazards and risks of the workplace, and to eliminate, control or minimize those hazards.
>
> Opinion No. 4. Work Procedure Problem: Mr. Jason Simmons' failure to properly plan for this work, perform a hazard analysis to include all hazards and mitigate those hazards by installing scaffolding for the crew to work from.
>
> Opinion No. 5. Stop Work Authority Problem: Mr. Randell [sic] Mitchell, Mr. Jason Simmons and other workers on the platform's failure to use their stop work authority to stop this job when they knew or should have known that the crew was going to have to work from heights without the use of the available scaffolding.

[Doc. No. 80-3, Borison Report].

### i. Borison's opinions are the product of reliable principles and methods.

Here, Padgett has demonstrated that the reasoning or methodology underlying Borison's opinion is a valid and a reliable means to address the potential causes of Padgett's fall. The *Daubert* test is flexible and takes into consideration that an expert may be qualified by experience to testify on matters within his expertise. In this case, Borison's opinions are based on extensive experience as a safety professional specifically with regard to safety issues in the oil and gas exploration, production, and transportation industries. He applies his knowledge of applicable

6

federal regulations and industry standards to the safety policies and procedures used by the parties in this case. While FCG faults him for failing to cite to specific regulations and standards and relying only on the polices and procedures contractually agreed to, the Court finds that his knowledge of and application of the regulations and standards is sufficient, even if he did not refer to those standards in rendering his opinions. FCG will have the opportunity to challenge his methodology at trial, as Padgett will FCG's own expert, Martin Gee.

### ii. Borison's opinions are relevant.

The Court further finds that Borison's opinions are relevant. Borison applied his knowledge and methodology after conducting a review of the depositions and the documents generated as a result of this accident, as well as the pertinent safety policies and procedures. His opinions will assist the trier of fact, the jury, to determine how the chain of command works, the roles of the various individuals involved in this accident, and the safety concerns and issues that allegedly could and should have been addressed and by whom.

FCG's argument that the opinions are within the knowledge of a lay person is misplaced. While Borison's testimony has been excluded or limited in certain other cases, each of those cases involved an accident that was clearly within the common knowledge of a layperson. *See, e.g., Kibodeaux v. Hercules Offshore Servs., LLC,* Civ. Ac. No. 15-1229, 2016 WL 9443773, at *1, 3, & 5 (E.D. La. Feb. 3, 2016) (no need for expert when a jury could "competently assess" the alleged negligence of a defendant when a seaman "tripped on a wooden pallet of hoses which had been left in a walkway"); *see also Terecero v. Oceaneering Itn'l, Inc.*, Civil Ac. No. 17-7438, 2018 WL 2100637 (E.D. La. Feb. 8, 2018) (expert testimony would not assist trier of fact when the plaintiff fell from a two-step stepstool); *Spaid v. Cheramie Marine, LLC*, Civil Ac. No.

7

16-14169, 2017 WL 268826 (E.D. La. June 22, 2017) (expert testimony would not assist the trier of fact when plaintiff fell into an open hole); *Thomas v. Global Explorer, LLC*, Civil Ac. No. 02-1060, 2003 WL 943645 (E.D. March 3, 2003) (expert testimony would not assist the trier of fact when the plaintiff's leg became entangled in a loose rope tied to the side of a secured ladder). This is not such a case. Undoubtedly, there are aspects within the grasp of a lay person, as in any case, but Borison's testimony is nonetheless relevant, which includes a finding that it is helpful to the trier fact, with regard to the safety issues, chain of command, and policies and procedures when performing the repair in question on an offshore platform.

### III. CONCLUSION

For the foregoing reasons, FCG's Daubert Motion and/or Motion in Limine to Exclude Plaintiff's Safety Expert, Robert E. Borison [Doc. No. 80] is DENIED.

Monroe, Louisiana, this 26th day of March, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**